FILED
2011 Aug-11 PM 01:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

GREGORY L. GIVENS,

Plaintiff,

v. CIVIL ACTION NO. 10-G-3483-NE

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

**MEMORANDUM OPINION**

The plaintiff, Gregory L. Givens, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Disability benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;

(2)  whether he has a severe impairment;

(3)  whether his impairment meets or equals one listed by the Secretary;

(4)  whether the claimant can perform his past work; and

  (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

  In the instant case, ALJ Rebecca LaRiccia determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," his impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 13]. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

**THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN**

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

**THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY**

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical

question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain

testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

**DISCUSSION**

The plaintiff was 48 years old at the time of ALJ Rebecca LaRiccia's decision. (This ALJ is from Chicago and held a video hearing). She found that the plaintiff could perform light work with a sit/stand option. The ALJ found that the plaintiff has the severe impairment of discogenic and degenerative disorders of the lumbar and cervical spines. [R. 11]. She found that the plaintiff's anxiety causes no more than a minimal limitation. Id.

The medical evidence of record includes three MRIs of the plaintiff's lumbar spine. A June 12, 2006, MRI showed:

> L5-S1: There is degenerative disc disease with mild broad-based disc bulge and very minimal central disc bulge or protrusion, but no significant canal stenosis. There is eccentric bulge or protrusion towards the right with mild right foraminal narrowing; the left foramen is widely patent.
>
> Mild osteoarthritic change of the facets at this level are noted and contribute in part to the right foraminal narrowing.
>
> L4-5: There is degenerative disc disease with eccentric right paracentral and right foraminal disc bulge. Mild right foraminal narrowing is noted; there is no significant left foraminal narrowing. Canal is patent.
>
> Above levels are unremarkable.
>
> CONCLUSION: Degenerative disc disease focused at L4-5 and L5-S1 as described above. Right-sided foraminal narrowing at both levels, most notably at L5-S1, related to a combination of disc and osteoarthritic change of facets posteriorly.

[R. 268-69]. A July 30, 2007, MRI dislplayed:

L5-S1: Loss of disc height and hydration with disc protrusion paracentral right compressing the thecal sac and abutting the right exiting nerve root. Facet arthrosis is present. Discogenic edema is identified.

L4-5: Annular tear with broad-based disc protrusion (herniation) compressing the anterior theca sac and narrowing the neural foramina right greater than left. Facet arthrosis is present.

L3-4: Mild facet disease.

L2-3: Mild facet disease.

L1-2: No significant abnormality.

The conus medullaris, cauda equina, and paraspinal musculature is unremarkable.

**IMPRESSION:**

Arthritic disease of the spine with marginal spurring and facet arthrosis as well as degenerative disc disease with loss of disc hydration and height throughout the lumbar spine. Paraspinal right protrusion (small herniation) is present compressing the right anterolateral theca sac narrowing the right neural foramina. There is annular tear at L4-5 with broad-based disc protrusion (small herniation) compressing the anterior theca sac with narrowing of the neural foramina bilaterally right greater than left.

[R. 302].

A third MRI of the lumbar spine was taken February 17, 2010. This depicted:

1. There is generalized degenerative disc disease of the lumbar spine with variable loss of intervertebral height, desiccation, and endplate irregularity. Mild posterior element hypertrophic degenerative change noted in the mid and lower lumbar spine.

2. At L1-L2, no herniation or annular bulge. Neural canals remain widely patent.

3. At L2-L3 and L3-L4, there are broad-based posterior protrusions, extending into the neural foramina. Neural canals remain satisfactorily patent.

4. At L4-L5, there is a broad-based posterior protrusion, asymmetrically prominent on the right. In conjunction with posterior element hypertrophic degenerative change and relatively short pedicles, there is moderate right lateral recess encroachment without central canal stenosis. There is right discal foraminal encroachment without definite impingement on the traversing nerve root. No central canal stenosis. The left foramen remains satisfactorily patent.

5. Lt L5-S1, there is a prominent broad-based posterior protrusion, extending into the right neural foramen. In conjunction with relatively short pedicles and posterior element hypertrophic degenerative change, there is bilateral recess encroachment, right greater than left. No central canal stenosis. There is borderline impingement on the right L5 nerve root as it traverses its foramen. The left foramen remains satisfactorily patent.

6. Visualized intrathecal contents are intrinsically normal in appearance. Bony spine intact. Paravertebral soft tissues unremarkable.

[R. 403]. The opinion was lumbar spondylosis with recess and foraminal encroachment at L4-L5 and L5-S1. Id.

The plaintiff also had an MRI of his cervical spine taken October 4, 2007. The impression was:

> Arthritic disease of the spine with marginal spurring, Schmorl's node involving the superior endplate of C7 as well as disc osteophyte complex compressing the anterior theca sac and abutting the spinal cord at C6C7 and as well as uncovertebral joint disease with narrowing of the left neuroforamina. Disc osteophyte complex is noted at C5-C6 producing mild compression of the anterior theca sac.

[R. 303]. A "Schmorl's nodule" is "a nodule seen in radiographs of the spine, due to prolapse of a nucleus pulposus into an adjoining vertebra." Dorland's Illustrated Medical Dictionary 1144 (28th Ed. 1994).

On December 5, 2008, the plaintiff's treating physician, Randall Quinn, M.D., completed a Request for Medical Information from the State of Alabama Department of Human Resources Food Stamp Program. Dr. Quinn did not believe the plaintiff was mentally or physically able to work. [R. 394]. His reason was "severe lumbar spine nerve impingement at several levels." Id. He also stated that he believed the plaintiff's condition to be permanent. Id.

On January 22, 2008, the plaintiff underwent a consultative physical examination by Bharat K. Vakharia, M.D., at the request of the Commissioner. Dr. Vakharia found:

> Musculoskeletal system, movement of the cervical spine, fairly within acceptable range. Significant tenderness lumbosacral spine. Straight leg raising 60 degree both the side. Crepitation both the knee joint. Movement of hip causing minimal back pain. Patient's gait was normal. He can walk on the tip toes as well as on the heel. Forward flexion of spine about 60 degree. Patient cannot squat more than 70 degree and stand up. No gross sensory motor loss in the lower limb.

[R. 354]. Dr. Vakharia's diagnosis was chronic low back pain, degenerative disc disease and fatigue. Id.

In applying the Eleventh Circuit's pain standard, the ALJ found that the plaintiff's testimony "is generally credible with respect to the presence of symptoms, but not with respect to the degree of limitation alleged." [R. 16]. She stated further that, "He

has taken Lortab for a number of years for the pain, and per the objective medical evidence, this helps." Id. Indeed, the plaintiff testified that he experiences sharp pains in his back and hip, and that the pain interferes with his sleep. [R. 60]. He said that he hurts all of the time, but some days are worse than others. Id. On his worst days, the plaintiff estimated the pain to be a six or seven on a 10-point scale. [R. 61]. He testified that he lies down four to six times a day for an hour at a time. [R. 69, 70].

Despite this testimony, the ALJ found that:

> the objective medical evidence shows good symptom control with Lortab. The claimant sees Dr. Quinn only once every six months for medication refills. In Exhibit 5E, the claimant reported greater ability to function, and there is no evidence of any worsening of his symptoms in the record.

[R. 17]. The exhibit referred to by the ALJ is a Physical Activities Questionnaire completed by the plaintiff on November 26, 2007, in which the plaintiff estimated he could stand 30 minutes, walk 30 minutes and sit 45 minutes. [R. 189]. At the ALJ hearing on March 24, 2010, he testified he could stand 10 to 15 minutes, sit for 15 to 20 minutes, and lift nothing heavier than a "Mountain Dew jug." [R. 67]. While the plaintiff's stand, walk and sit estimations are indeed "greater" than what he estimated some two and one-half years later, the differences are minimal, and in both instances the plaintiff is testifying to limitations caused by his pain.

The ALJ's finding that there is no evidence of any worsening of symptoms is not supported by substantial evidence. On January 11, 2006, the plaintiff was seen for severe back pain with radiation into his right leg. [R. 256]. The plaintiff had a positive

straight leg raise test[1] on the right. Id. On January 27, 2007, the plaintiff continued to report low back pain that was making sleep difficult. [R. 281]. Treatment notes from March and May 2007 continue to evidence his complaints of back pain. On June 7, 2007, the plaintiff told Dr. Quinn his pain was "somewhat worse than it has been before." [R. 291]. By August 23, 2007, Dr. Quinn noted that his "back pain seems to be a great deal worse and it is very bothersome to him. He wonders if we can increase his pain medicines." [R. 290]. Dr. Quinn increased the plaintiff's Lortab dosage from 7.5 to 10, and recommended that the plaintiff be evaluated by Cheng W. Tao, M.D., a neurologist. Id. The plaintiff saw Dr. Tao on September 28, 2007, and reported significant stiffness and pain in his lower back. [R. 299]. Dr. Tao recommended epidural injection to relieve pain, and on December 28, 2007, the plaintiff had a lumbar epidural steroid injection and a sacroiliac joint injection on the right. [R. 340]. On January 14, 2008, Dr. Quinn noted that the plaintiff was still having "bothersome" chronic back pain. [R. 385]. By April 22, 2008, the plaintiff requested that Dr. Quinn increase his pain medicine. Id. Dr. Quinn prescribed Lortab 10 again, and said that the plaintiff understood "that if he needs more pain medicine, we will have to send him to a pain medicine specialist." Id. On January 5, 2009, Dr. Quinn noted again that the plaintiff requested an increase in pain medication.

---

[1] A positive SLR (Straight Leg Raise test) is recognized by the regulations as a clinically appropriate test for the presence of pain and limitation of motion of the spine. (See Listing 1.00(B), ¶5)  The SLR test is also known as Lasègue's sign: "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed. This distinguishes the disorder from disease of the hip joint." Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

[R. 396].  By March 17, 2009, the plaintiff told Dr. Quinn that his back pain was "essentially unchanged," but that it still gave him "a great deal of trouble." [R. 399].

The medical record contains objective medical evidence of a condition which could be reasonably expected to give rise to the plaintiff's pain, in the form of multiple MRIs, as well as treatment notes from Drs. Quinn and Tao.  The medical evidence also shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations.  See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").  Additionally, the continued prescriptions by treating physicians for narcotic pain medicines and epidural steroid injections lends strong support to the plaintiff's allegations of intense or persistent pain.  As Judge Allgood observed in Lamb v. Bowen:  "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain.  No examining physician ever questioned the existence of appellant's pain.  They simply found themselves unable to cure the pain."  847 F.2d 698 (11th Cir. 1988).

It is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence.  Therefore, the ALJ failed to satisfy the requirements of Hale.  The conclusion of that court is equally appropriate in the

instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

At the hearing, the ALJ asked the vocational expert whether: (1) the inability to attend to or complete tasks because of pain on more than an occasional basis; and (2) the need to lie down for one hour twice a day would affect a hypothetical individual's ability to work. In both instances, the VE testified that hypothetical person could not work: he "would be considered a non-competitive employee." [R. 74]. Taking the plaintiff's testimony as true, the VE's testimony establishes disability without a doubt.

**CONCLUSION**

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 11 August 2011.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.